**STATE of Missouri, Respondent,**

v.

**Anthony ARELLANO, Appellant.**

**No. WD 38607.**

Missouri Court of Appeals,
Western District.

July 7, 1987.

As Modified Aug. 27, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 1, 1987.

Application to Transfer Denied
Oct. 13, 1987.

John E. Turner, Kansas City, for appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and LOWENSTEIN and GAITAN, JJ.

KENNEDY, Presiding Judge.

Defendant appeals from jury trial convictions of first-degree assault upon one Steven Earls, § 565.050, RSMo Supp. 1984, with a sentence of seven years' imprisonment; second-degree assault upon one Jeannie Bennett, § 565.060, RSMo Supp. 1984, with a sentence of seven years' imprisonment; and with two counts of armed criminal action, § 571.015, RSMo 1978, with three-year and ten-year prison sentences

based respectively upon the Earls assault and the Jeannie Bennett assault. The sentences were to run consecutively.

The incident took place adjoining a public park in Kansas City on May 7, 1986. A number of children and adults had gathered at the park in the late afternoon for three little-league Allstar baseball games. Defendant, who had a son participating in one of the baseball games, left the games briefly and drove to a nearby place for refreshments. As he drove by the place where Steven Earls was standing with some other men, there was some hostile exchange between himself and Earls. On his return, he parked his car on the street near where Earls was standing with the others. There was bad blood between defendant and Earls. They had previously to this day had two fistfights. Earls approached defendant's car. Earls testified at the trial that defendant had motioned him to come to the car and that he was responding thereto. Defendant testified to the contrary that Earls approached on his own initiative. Defendant stepped out of his car with a .357 Magnum in his hand. He fired the gun. Earls turned to run. He tripped and fell down. He got up and fled at a high rate of speed. Defendant ran after him, firing the gun. Defendant testified that he fired a total of three shots, but one witness testified that he counted six shots. Earls was not hit, but one of the shots struck a young girl by the name of Jeannie Bennett who was playing in the park, inflicting a serious wound. Earls outdistanced the defendant, and defendant returned to his car.

The testimony of Earls and others supports the hypothesis, submitted by the verdict-directing instruction, that defendant attempted to kill or cause serious physical injury to Earls, § 565.050, and that in doing so he inflicted serious physical injury upon Jeannie Bennett with a deadly weapon, § 565.060. Defendant does not challenge the sufficiency of the evidence to support the verdicts, and we do not need to detail the evidence of the encounter.

Defendant says, though, that his own testimony required a self-defense instruction, and he assigns error in that none was given.

Defendant's testimony is as follows:

Well, when I got halfway out of my car, Earls started approaching me with his hands in his pocket. And then I would say I took maybe three or four more steps. Out of his right-hand pocket he pulled a knife. At that time I reached back in and got my gun. I got out and he kept coming and I shot it at the ground ... Then he turned around and he—I took maybe three or four more steps, and he was running and I shot the second time in the air. Then I started chasing him because I was scared.... All I wanted to do was scare him ... As I stepped out of the car, Mr. Earls approached me with his hand in his pocket, pulled the knife out. Then I got back in my car ... Well, I got out, I had [the .357 Magnum] to my side, and he came at me with the knife still coming like this, and I shot at the ground. Then he turned around, started running. I took maybe three steps more and I shot again at the air. There was never a direct aim at him.

■■■ For some purposes, where a bystander is an unintended victim of an assault directed at another, the actual victim is deemed to stand in the shoes of the intended victim. The defendant's intent toward the target is transferred to the bystander for the purpose of fixing the grade of the offense. *State v. Mannon*, 663 S.W.2d 780, 782 (Mo.App.1983); *State v. Eiland*, 534 S.W.2d 814, 817 (Mo.App.1976). If the assault upon the bystander was committed in self-defense against an attack by the intended victim, self-defense furnishes a defense against a charge of assault upon the bystander. *State v. Stallings*, 326 Mo. 1037, 33 S.W.2d 914, 916 (1930); *State v. Harris*, 717 S.W.2d 233, 235 (Mo.App.1986).

■■■ Was defendant entitled to a self-defense instruction on the charge of assault against Jeannie Bennett? We hold he was not. All the evidence, including defendant's own testimony, is that it was not the first shot but one of the subsequent shots that struck her. Defendant's own

testimony is to the effect that Earls was running away after the first shot. Self-defense furnishes a defense only when the danger to be warded off is imminent; it is not available when the victim is in headlong retreat. *State v. Sherrill*, 496 S.W.2d 321, 326 (Mo.App.1973); 6A C.J.S. Assault & Battery § 88 at 476 (1975).

 Another approach deprives defendant of the defense of self-defense in the charge of first-degree assault upon Steven Earls, and also furnishes a second ground for denying self-defense in the Jeannie Bennett assault charge. By defendant's own account, he secured the gun from the car seat and advanced, or began to advance, gun in hand, to meet Earls. He might have closed the door and have been protected. Before resorting to deadly force, one must retreat as far as it is feasible to do so. *State v. Miller*, 653 S.W.2d 222, 224–25 (Mo.App.1983); *State v. Christie*, 604 S.W.2d 806, 808 (Mo.App. 1980). Instead of getting back into his car and closing the door, he secured the gun and was outside his car when he began firing. A recent case of the Eastern District of this court, similar in many points of fact to the present case, furnishes authority for holding, as we do, that there was no error in the trial court's failure to give a self-defense instruction, either in the charge of assault upon Earls or in the charge of assault upon Jeannie. *State v. Harris*, 717 S.W.2d 233 (Mo.App.1986).

Defendant next claims that the court should have instructed upon third-degree assault both in the Earls assault charge and the Jeannie Bennett assault charge.

 As to the Earls assault, the court instructed upon first-degree assault and second-degree assault. The jury convicted of first-degree assault. Since they never reached the second-degree assault, it is harmless error, if error at all, not to have instructed upon third-degree assault. *State v. Powell*, 728 S.W.2d 622, 624–625 (Mo.App.1987); *State v. Stiles*, 712 S.W.2d 42, 43–44 (Mo.App.1986); *State v. Householder*, 637 S.W.2d 324, 328 (Mo.App.1982).

With respect to the assault upon Jeannie Bennett, the jury was instructed upon and convicted of second-degree assault. No third-degree assault instruction was given. In determining whether the failure to give the third-degree assault instruction was error, we consider two questions.

 The first question is whether third-degree assault is a lesser included offense of second-degree assault. The answer is that it is. *State v. Hyatt*, 716 S.W.2d 423, 426 (Mo.App.1986). Since third-degree assault is a lesser included offense of second-degree assault, it must be instructed on if there is a basis in the evidence to acquit of the greater offense and convict of the lesser offense. § 556.-046.2, RSMo 1978. *State v. Olson*, 636 S.W.2d 318, 321 (Mo. banc 1982).

One is guilty of assault in the second degree if "he recklessly causes serious physical injury to another person". § 565.-060.1(2). This was submitted to the jury in this case.

One is guilty of assault in the third degree if "with criminal negligence he causes physical injury to another person by means of a deadly weapon". § 565.070.1(2), RSMo 1978. A third degree assault instruction, as noted, was not given.

Section 562.016.4, RSMo 1978, provides: "A person 'acts recklessly' or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation".

The same section goes ahead to provide: "A person 'acts with criminal negligence' or is criminally negligent when he fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation". § 562.016.5.

Our question comes to this:

 Viewing the evidence in a light most favorable to the third-degree assault instruction, can we say as a matter of law that the evidence established reckless con-

duct on defendant's part to the exclusion of "criminally negligent" conduct? *See State v. Cole*, 377 S.W.2d 306, 307 (Mo.1964); *State v. Smith*, 518 S.W.2d 665, 667 (Mo. App.1975). We are unable so to declare. The defendant's testimony, if believed by the jury, would allow a finding of criminal negligence as opposed to recklessness. He testified that he did not aim his gun at Earls. He intended only to scare him and to stop his advance toward him. His first shot was at the ground, and the later shots were in the air. This testimony of the absence of any intent to kill or injure Earls is supported in some degree by his omission to shoot Earls after he fell down and as he was lying on the ground. In *State v. Lynn*, 184 S.W.2d 760 (Mo.App.1945) (decided before the present first-degree, second-degree, third-degree assault statutory classification), similar facts were held to justify an instruction on common assault, where defendant made the argument that his crime under the evidence was felonious assault or nothing.

■ Of course, one may be reckless or criminally negligent when his conduct is undirected and random, without having a particular person as its target. *Compare State v. Moseley*, 705 S.W.2d 613 (Mo.App. 1986) *with Ruffin v. State*, 10 Md.App. 102, 268 A.2d 494 (1970). The jury might believe defendant's testimony that he fired at the ground and in the air with no intention of striking Earls, and yet might find his shooting to be reckless or criminally negligent because of the presence of a crowd of people. The state's evidence on this point is that there were a number of people in the immediate vicinity of the shooting. Defendant's testimony, on the other hand, is that the bystanders were at a considerable distance from the site of the shooting. Jeannie Bennett herself, according to defendant's testimony, was the length of a football field distant from where he discharged the gun.

To sum up, it was for the jury to say whether the defendant's conduct was reckless or criminally negligent and the court was in error in not instructing upon third-degree assault.

■ Since the conviction for assault upon Jeannie Bennett must be reversed and remanded for a new trial, the armed criminal action conviction based upon the Jeannie Bennett assault must also be reversed and remanded. *See State ex rel. Westfall v. Ruddy*, 621 S.W.2d 42, 44 (Mo. banc 1981); *Simms v. State*, 568 S.W.2d 801, 804 (Mo.App.1978).

The reversal and remand of the armed criminal action conviction based upon the Jeannie Bennett assault makes it unnecessary to rule upon another point raised by defendant. That point is that two armed criminal action convictions based upon the same act or series of acts, although that act resulted in two separate crimes, violated the double jeopardy clause. U.S. Const. amends V·& XIV, § 1; Mo. Const. art. I, § 19.

The judgment of conviction of first-degree assault upon Steven Earls and the judgment of conviction upon the armed criminal action charge based upon the Steven Earls assault are both affirmed. The conviction of second-degree assault upon Jeannie Bennett and the judgment of conviction of armed criminal action based upon the Jeannie Bennett assault are both reversed, and the case is remanded for a new trial upon those counts only.

All concur.